Argued December 21, 1937; reversed January 18, 1938

In re Ohlsen's Estate

STATE LAND BOARD *v.* RANSOM

(75 P. (2d) 6)

Department 2.

198

*Sanderson Reed*, of Salem, and *A. C. Fulton*, of Astoria (G. C. Fulton, of Astoria, on the brief), for appellant.

*Garnet L. Green*, District Attorney, of Astoria, for Clatsop County.

BEAN, C. J.   This is an appeal by the State Land Board of Oregon from the decree of the circuit court directing that the administrator of the estate of Olaf Ohlsen, deceased, sell the real property and pay the proceeds to the State Land Board, *said property to be sold subject to the lien of the taxes accrued and due against said property up to the 30th of April, 1936.* It is the portion of the decree in italics to which the appeal is directed and which is claimed to be erroneous.

The facts in the case are stipulated substantially as follows: Olaf Ohlsen, a resident and inhabitant of Clatsop county, Oregon, died intestate November 5, 1932, without heirs.   At the time of his death he was the owner in fee and in possession of an eighty-acre tract of real estate situated in Clatsop county, Oregon, which was wholly unencumbered.   On December 2, 1932, the county court for Clatsop county issued letters of administration to Hollis Ransom, who immediately entered upon the discharge of his trust, and is still such administrator.   Said estate was solvent and, after the payment of all claims against it and all the costs of administration, there remained considerable money and

other valuable personal property, not involved in this appeal, however. Said real estate has never been sold by the administrator, nor has the estate been finally settled. On May 8, 1936, the county court entered an order in which, among other things, it was decreed that the decedent Ohlsen died intestate, without heirs, and ordered that the administrator forthwith pay all taxes levied and assessed against said real property after decedent's death, for general governmental purposes, namely, for the years 1933, 1934, 1935 and 1936, amounting to approximately $155. The State Land Board timely appeared and filed objections to such order and the allowance thereof by the court, upon the ground that the title to said real property, upon the death of the decedent, escheated to and became vested in the State of Oregon, and hence such tax levies for said years were wholly void. The county court overruled said objections and ordered the administrator to pay all such taxes. The State Land Board appealed to the circuit court for Clatsop county from the order overruling said objections and directing such payment. After a hearing on the appeal, the circuit court affirmed the decree of the county court, and, on January 28, 1937, entered a decree to that effect and remanded the cause to the county court.

There is but one proposition for solution on this appeal, and it is purely a legal one, namely, where a resident and inhabitant of Oregon dies intestate, without heirs and being the owner in fee of the unencumbered title to and in possession of real estate in Oregon, is such real estate taxable for general governmental purposes, levied and assessed after the decedent's death? If this question is answered in the affirmative the decree of the circuit court should be affirmed, but

if the answer is in the negative then the decree of the circuit court must be reversed.

Appellant contends that the real property owned by decedent at his death was not subject to taxes levied and assessed against it for general governmental purposes subsequent to his death.

Section 11-1204, Oregon Code 1930, provides as follows:

"Immediately upon the death of a person who shall die intestate without heirs, leaving any real, personal, or mixed property, interest, or estate in this state, the same shall vest in the state of Oregon, subject only to the lawful claims of creditors, and as in this act hereinafter provided; * * *"

This section is section 3 of the General Laws of Oregon of 1903, page 127. The other provisions of the act, and acts amendatory thereof, providing for the method of procedure to be followed in administering an estate, the sale of the escheated real estate, the turning over to the State Land Board of the balance of the cash received, the proceeds of such escheated property after payment of certain special claims, costs and expenses, and the execution of a deed by the administrator to the State Land Board, do not relate to the time when the title to the escheated property becomes vested in the state. This particular section has never been repealed or amended directly or by implication, nor is there any legislation in Oregon conflicting therewith. Under the provisions of this section the title to all the real property owned by the decedent Ohlsen at the time of his death became vested immediately in the State of Oregon, subject only to the lawful claims of creditors. The title to such realty was never vested in the administrator, or in anyone other than the state. The other portions of the act of 1903, other than section

11-1204, have been amended, and there are some clauses which are practically repetitions, but none of the provisions relate to the time when such real estate escheats and vests in the state, except the section above quoted. We think, under our statutes of descent that there can be no distinction drawn between the time the title vests in the state and the time the title vests in the legal heirs of a person who dies intestate: *De Bow v. Wollenberg,* 52 Or. 404, 432 (96 P. 536, 97 P. 717).

■ The policy of the law seems to be that administration of escheated estates should be conducted expeditiously in order to decrease the expenses and avoid lessening the amount of the proceedings to be paid to the school fund.

■ The law is stated in 10 R. C. L. 616, § 14, as follows:

"It is the general common-law rule that upon the death of a person intestate and without heirs, or without heirs competent to take, the title by escheat vests in the state immediately. The reason for this is found in the theory of feudal tenure that the freehold must vest somewhere,—it cannot be in abeyance for even a single minute. This rule applies also in the case of the death of an alien intestate."

■ This rule is supported by the great weight of authority. In 21 C. J. 859, Note 12 (a), it is stated: "The fee cannot be in abeyance and must therefore vest at once." Citing numerous cases. To the same effect see: 3 Thompson on Real Property, 543, 544, § 2427, et seq.; Attorney General's Opinions, 1934-1936, Nov. 16, 1934, p. 151; Annotation to *Louisville School Board v. King,* 15 L. R. A. (N. S.) 382. If an owner dies intestate without heirs and no proceeding is necessary, the title vests in the state by operation of law imme-

diately on his death: 21 C. J. 859, § 33. Neither entry upon the land nor the judgment of a court is necessary to consummate the title of an estate under an escheat.

In the annotations to the case of *Re Melrose Ave.*, in 23 A. L. R. 1233 (234 N. Y. 48, 136 N. E. 235), at page 1237, we read:

"Although the courts formerly held that, on the death of a citizen intestate and without heirs, title to his real property did not vest in the state until there had been an adjudication of escheat, most of the recent decisions are in accord with the reported case (Re Melrose Ave. ante, 1233) in holding that immediately on his death the title vests in the state." (Citing a wealth of authority).

■ The title to the real property of the decedent Ohlsen, under the facts in this case, became vested in the State of Oregon upon his death, namely, November 5, 1932, and the title being in the State of Oregon, the real property was not subject to taxation thereafter.

Section 11-1202, Oregon Code 1930, reads as follows:

"If such estate or any part thereof consists of real property, which has not been sold for the purposes of administration, it shall be the duty of the administrator to sell such real estate in the same manner as real estate is sold by administrators for the payment of debts against the estate upon order of the county court obtained in like manner. If no offer for the purchase of such real estate is received by said administrator, which said administrator or the county court deems adequate, any and all offers may be rejected, whereupon the county court shall make and enter an order directing said administrator to deed such real property to the state of Oregon, and such property shall thereafter be under the control and management of the state land board, as other real property belonging to the common school fund and acquired upon foreclosure of mortgage."

■■ This section provides the method of turning the land into cash for the purpose of paying the escheat in money instead of land. If the administrator is not able to sell the land and get the cash and does not make a deed to a purchaser on behalf of the State of Oregon, he makes a deed to the State of Oregon, but the state holds the money and not the land, if the land can be sold. It is competent for the statute to authorize the administrator to sell the land just as much as it is for the law to provide that the State Land Board might sell certain land belonging to the state. The state owns the land. It directs the administrator to sell the land, if possible, and pay the "clear proceeds" into the treasury of the state. The proceedings for the sale of land by the administrator passes the title of the state, not of the administrator or of the estate of the decedent. The deed, in such case where the administrator cannot sell escheated land and executes a deed to the State of Oregon, is in the nature of evidence that the proceedings necessary under the statute have been taken by the administrator; the deed does not convey the title to the state. The title to the state passes pursuant to law at the time of the decedent's death. Where there is someone in possession of the land that has escheated or there is a dispute in regard to the title thereto, the statute provides for the proceedings to determine such matter. Where there is no one in possession of the land and no adverse claim as to the title, there is no necessity for judicial proceedings or office found in order to pass the title to the state. Practically, the state is the legal heir of one dying intestate without blood heirs. Real property never vests in the administrator; it vests in the heir, subject to administration proceedings and so vested in the State of Oregon in this case: 3 Thompson on Real Property, 544, § 2427.

In *Sands v. Lynham*, 27 Gratt. (Va.) 291 (21 Am. Rep. 348), the rule is thus laid down:

"The doctrine of escheat is originally derived from the old feudal law. An inquisition does not constitute an escheat. It is simply the means by which the State furnishes authentic record evidence of her title. The word 'Escheat' is derived from the French, and properly signifies the falling of the lands by accident to the lord of whom they are holden, in which case the fee is said to be escheated. It is a species of reversion by which, upon the death of the tenant without heirs, the lord becomes entitled to the estate."

In 4 Kent's Com. 489 (14th Ed.), it is stated:

"It is a general principle in the American law, and which, I presume, is everywhere declared and asserted, that when the title to land fails from defect of the heirs, or devisees, it necessarily reverts or escheats to the people, as forming part of the common stock to which the whole community is entitled. Whenever the owner dies intestate, without leaving any inheritable blood, or if the relations whom he leaves are aliens, there is a failure of competent heirs, and the lands vest immediately in the state by operation of law. No inquest of office is requisite in such cases; * * *"

■ It does not appear from the report of the administrator that he paid any taxes on the land after the death of Ohlsen. The taxes on the land which Ohlsen owned on March 1, 1932, which were assessed as of that date, and upon which the taxes were levied thereafter, are subject to payment by Ohlsen, or his estate. See section 69-722, Oregon Code 1930; see also same section, Oregon Code Supplement 1935.

In the objections and the record, the taxes for the years mentioned are all grouped together, amounting to the sum of $155, so that we are unable to say exactly what amount was levied on the land assessed as of

March 1, 1932. That amount, which is easily ascertainable, should be paid by the administrator.

The decree of the circuit court will be reversed and one directed to be entered requiring the county court to order the administrator to sell the land in question without subjecting the same to the taxes assessed and levied since the death of Olaf Ohlsen, except the administrator should pay the taxes on the land owned by Ohlsen March 1, 1932, and thereafter levied for that year.

The cause will be remanded to the circuit court for proceedings accordingly.

BAILEY, RAND and LUSK, JJ., concur.