## In re ESTATE OF John P. GILLIN

[773 A.2d 270]

No. 00-373

March 19, 2001. This is an appeal by petitioners Esther Kearney, Margaret Raleigh and Charlotte Keefe, from an order of the Franklin Superior Court dismissing their appeal from the Franklin Probate Court. The probate court denied petitioners' claim as adoptive first cousins to the estate of John P. Gillin, who died intestate on May 24, 1984. At the time of Gillin's death, no heirs by blood survived him, and the Vermont statutes in effect at the time prohibited collateral relatives, such as petitioners, from inheriting from a person who had been adopted. See 15 V.S.A. § 448 (1963). The primary property in the estate was a 155-acre farm located in Fairfield, which passed to the Town of Fairfield by Order of Escheat on August 15, 1985. Petitioners' claim is based on our subsequent decision in *MacCallum v. Seymour's Administrator*, 165 Vt. 452, 453, 686 A.2d 935, 935 (1996), which held that 15 V.S.A. § 448 unconstitutionally denied adopted children the right to inherit from collateral relatives. Petitioners argued before the probate court and the superior court that the *MacCallum* decision applies, as well, to permit collateral relatives to inherit from adopted children, and that their claim is timely filed under the escheat statute, 14 V.S.A. § 684. We agree and reverse.

In *MacCallum*, we held that the two rationales proffered to validate 15 V.S.A. § 448 were not reasonably related to a valid public purpose. The first, that the

presumed intent of collateral relatives was that their property would pass only within the bloodline, was rejected because, as applied to the laws of intestate succession, it made statutory discrimination lawful as if it were private discrimination. *MacCallum*, 165 Vt. at 458, 686 A.2d at 938 (citing *Trimble v. Gordon*, 430 U.S. 762, 775 n.16 (1977) (applying same rationale to illegitimacy)). Moreover, the statute reflected an outdated way of thinking about the status of adopted children. The second rationale, that adoption represented a contract between the adoptee and the adopting parent to which the collateral relatives had not consented, was rejected because it made no sense. Indeed, the contractual theory was based on the same underlying premise that we found to be outdated in the presumed intent theory — that the adopted child should occupy a status that is less than equal to other relatives.

Given our rationale in *MacCallum*, we see no reason why it is not equally valid in the case at bar, where the only difference in the two cases is that the persons seeking to inherit are the collateral relatives of an adopted child, rather than the reverse. The decision was not based on the characterization of adopted children as a suspect class, entitled to a level of stricter scrutiny that would not apply to the petitioners here. See *id.* at 460-61, 686 A.2d at 940. We applied the analysis from *Choquette v. Perrault*, 153 Vt. 45, 569 A.2d 455 (1989), that the rationale was not reasonably related to a legitimate state purpose. *MacCallum*, 165 Vt. at 457, 460, 686 A.2d at 937-38, 939. Therefore, if we were to hold the statute valid as to petitioners, thereby barring their inheritance, we would have to embrace the underlying premises we have already rejected.

The Town makes a number of arguments as to why *MacCallum* should not apply to the petitioners, none of which we find meritorious. First, the Town argues that our decisions in *In re Estate of Hagar*, 98 Vt. 235, 126 A. 507 (1924), and *In re Raymond Estate*, 161 Vt. 544, 641 A.2d 1342 (1994), require us to hold that the inheritance rights of petitioners vested at the death of Gillin, and that the statutes in force at the time govern the disposition of the estate. In reality, this is an argument that *MacCallum* should not be applied retroactively. The Town argues that it would be inequitable to do so because the ruling might affect numerous estates long since settled. With respect to hardship to the Town, the Town claims, as the temporary beneficiary of the escheat laws, it has lost the tax value of the estate since 1986 and may now suffer the hardship of losing both the property and the taxes.

The general rule is that judicial decisions are applied retroactively. In *American Trucking Ass'ns, Inc. v. Conway*, 152 Vt. 363, 378, 566 A.2d 1323, 1332 (1989), we held that "relief will be nonretroactive only where the case establishes a new rule of law . . . and where its retroactive application would be inequitable."[*] Assuming *MacCallum* announced a new rule of law, we see no inequity either to estates settled or to the Town itself that would prevent us from applying our general rule on retroactivity.

First, with respect to whether we would create a hardship to intestate

---

[*] Our decision in *American Trucking* was based on the United States Supreme Court decision in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971). The analysis of retroactivity in *Chevron* has since been abandoned, in part, by *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97-99 (1993), which held that retroactivity should not depend on the particular equities of individual claims. Eliminating the hardship analysis, however, only strengthens our decision here that retroactive application of *MacCallum* is appropriate. See *LaFaso v. Patrissi*, 161 Vt. 46, 57, 633 A.2d 695, 701 (1993).

estates already settled, where collateral relatives by adoption may have been excluded, we think the number is likely to be small. The question of unsettling closed estates is further complicated by whether such estates may be reopened. We view these potential complications as remote and not likely to cause major difficulties. For intestate estates that may not be reopened, *MacCallum* is not a factor. Here, petitioners were able to file a late claim to the estate because the Town took the property by escheat, under 14 V.S.A. § 684, which provides:

> If a devisee, legatee, heir, widow or other person, entitled to such estate, appears within seventeen years from the date of such decree and files a claim with the probate court which made such decree, and establishes the claim to such estate, he shall have possession of the same, or, if sold, the town shall be accountable to him for the avails, after deducting reasonable charges for the care of the estate. If the claim is not made within the time mentioned, it shall be barred.

Thus, the number of estates that mirror these facts — intestacy, adoptive relatives excluded, and escheat — may be nonexistent.

With respect to hardship to the Town, there is none. Petitioners brought their claim within *seventeen years, and as long as they are determined to be the heirs*, the Town has no right to claim the property for itself. Escheat is not favored and applies only as a last resort when no one qualifies to inherit. *United States v. 198.73 Acres of Land, More or Less*, 800 F.2d 434, 435 (4th Cir. 1986). The Town's interest was always contingent unless no heirs appeared within the time allowed. Therefore, there can be no hardship to the Town to lose a property to which it did not have a vested right.

Nor does the Town suffer from its failure to collect taxes for the years the property was off the grand list. Towns collect whatever taxes are necessary to run the town from the properties on the grand list. The Town did not suffer a deficiency in taxes. For the same reason, the Town's claim for back taxes for the years it held the property must fail. No tax bills were issued for the property for those years. There is no deficiency to be reimbursed.

Finally, the Town claims that this case must be remanded for the trial court to determine an issue it did not reach — whether the Town could retroactively charge taxes on the property and recoup its expenses, now that heirs have appeared. In the interests of judicial economy, and in light of the age of the claimants in this case, we address the tax issue here. Nothing in the escheat statute gives the Town the right to charge taxes retroactively. See *In re Ohlsen's Estate*, 75 P.2d 6, 9 (Or. 1938) (real property that escheats to the state is not subject to taxes). Under 14 V.S.A. § 683, the escheated estate assigned to the Town "shall be for the use of schools in the towns respectively and shall be managed and disposed of like other property appropriated to the use of the town school districts." Although the Town was permitted under the statute to dispose of the property, if it did so, the proceeds were to be used for school purposes. School property is not taxable. 32 V.S.A. § 3802(4) (exempting real property owned or leased by public schools). As exempt real estate, such property could not be listed as "taxable" real estate in the grand list. 32 V.S.A. §§ 3651, 4151(b), 4152(a)(3). The Town, which held the property by virtue of the escheat statute, cannot retroactively change the status of the property when its right to hold it is extinguished.

The only other provision for the Town's expenses appears in 14 V.S.A. § 684, which provides that if the property

is *sold*, "the town shall be accountable to [the heir] for the avails, after deducting reasonable charges for the care of the estate." The property at issue was not sold. Therefore, there can be no claim on the part of the heirs for the "avails" or the Town for reasonable expenses for care of the estate.

*Reversed and remanded to the Franklin Probate Court to determine the heirs, such cause to be expedited and a hearing, if necessary, held forthwith.*